(No. 84-CC-0595 

CARLSON ROOFING CO., Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Order filed April 17, 1987.*

*Opinion filed April 7, 1994.*

CARLSON ROOFING CO., *pro se*, for Claimant.

ROLAND W. BURRIS, Attorney General (KATHLEEN O'BRIEN, Assistant Attorney General, of counsel), for Respondent.

## OPINION

JANN, J.

On June 17, 1982, Claimant, Carlson Roofing Co. (hereinafter referred to as Carlson), entered into a contract with Respondent Northern Illinois University (hereinafter referred to as NIU) for the installation of a replacement roof of a university building. The contract specifically provided in part that Carlson use only materials manufactured by TREMCO Roofing Company and that the project meet Underwriter's Laboratory (U.L.) class A rating and that TREMCO issue their ten-year guarantee at the project completion.

After the work on the roof had begun, it was discovered that several amendments to the contract were necessary. The contract price was increased to reflect the additional work and materials required.

It was also discovered that specifications as written could not achieve the U.L. standard required to obtain the TREMCO ten-year guarantee. In order to obtain the U.L. rating, it was necessary to substitute a base sheet material which was $814.98 less expensive than the material originally required, and an insulation which was $1,986.60 less expensive. It must be noted that all undisputed amounts due on the contract have been paid.

The sole issue before this Court is whether or not the State is entitled to a credit of $2,801.58 for the less expensive materials substituted.

It is clear that the purpose of the project specifications as proposed were to offer the bidding contractors a standard on which they could reasonably base their bids. It is reasonable to expect that after a major construction project such as this one has begun, it becomes necessary to make amendments to the original contract agreement.

The evidence indicates Carlson and NIU were agreeable to contract modifications. In fact, the contract price was increased on two separate occasions in the amounts of $2,632.50 and $1,286.39 respectively as additional material and labor became necessary. Carlson was also willing to substitute other less expensive materials when it was determined that the originally specified materials were unsuitable to achieve the ultimate project goals. However, Carlson was not willing to decrease the contract price or credit NIU for the less expensive materials.

Carlson contends that the type of insulation and base sheet were prescribed in the original project specifications

and, therefore, the fact that subsequent changes were required was irrelevant. The fact that two substantially less expensive materials were ultimately required is relevant and NIU is entitled to a credit respectively. In the event that NIU had required a substantially more expensive material, NIU would have been responsible to adjust the contract price to reflect the required change. Clearly, the same standard must apply where a substantially less expensive material is ultimately used.

In absence of any evidence disputing the reduced cost of the substituted materials or any evidence demonstrating that the substitution increased labor or any other costs of construction, we hereby find that NIU is granted a credit to the contract in the amount of $2,801.58 and Carlson's claim is denied.